UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**MARIO RABOZZI and HELEN RABOZZI as wife
of MARIO RABOZZI**

    v.                                                         5:03-CV-1397 (NAM/DEP)

**BOMBARDIER, INC. and BOMBARDIER
MOTOR CORP. OF AMERICA,**

            Defendants.
_____

**APPEARANCES:**                            **OF COUNSEL:**

MITCHELL, MITCHELL and PALMER         RICHARD C. MITCHELL, ESQ.
52 East Cayuga Street
Oswego, New York, 13126
*Attorneys for Plaintiffs*

GOLDBERG SEGALLA, LLP                 NEIL GOLDBERG, ESQ.
665 Main Street, Suite 400
Buffalo, New York 14203
*Attorneys for Defendants*

**Norman A. Mordue, Chief U.S. District Judge**

## MEMORANDUM -DECISION AND ORDER

      Plaintiffs, husband and wife, Mario Rabozzi ("Rabozzi') and Helen Rabozzi, bring this products liability action alleging negligence, breach of implied warranty of fitness and merchantability, strict products liability, and loss of consortium against defendants Bombardier, Inc. and Bombardier Motor Corporation of America (collectively "Bombardier"). *See* Dkt. No. 17, Ex. A., Compl. at ¶¶ 8, 12, 14, and 16. Currently before the Court are Bombardier's motions: (1) for an Order, pursuant to Rule 702 of the Federal Rules of Evidence precluding the testimony of plaintiffs' expert, Eugene F. Penzimer, P.E., and (2) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure dismissing plaintiffs' Complaint in its entirety. *See* Dkt. No. 17, Notice of

Mot. Plaintiffs oppose Bombardier's motions. *See* Dkt. No. 18. For the reasons that follow below, Bombardier's motion *in limine* to preclude plaintiffs' expert's testimony is GRANTED and Bombardier's motion for summary judgment is GRANTED.

**I.    BACKGROUND**

*A.    Complaint and Procedural History*

On September 26, 2003, plaintiffs filed their Summons and Complaint against Bombardier in the Supreme Court of the State of New York, County of Oswego. The Summons and Complaint were served upon Bombardier on October 22, 2003. On November 20, 2003, Bombardier removed plaintiffs' action to the Northern District of New York pursuant to 28 U.S.C. §§ 1332 and 1441. Bombardier set forth the parties' diversity of citizenship asserting that plaintiffs are residents of the State of New York while Bombardier Motor Corporation of America is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Grant, Florida and Bombardier, Inc. was incorporated in Canada with its principal place of business in Montreal, Quebec, Canada. *See* Dkt. No. 1, Notice of Removal at ¶¶ 1-5. Bombardier also set forth the amount in controversy noting that Plaintiffs' Complaint seeks $550,000 in damages. *See id.* at ¶ 6. Bombardier has satisfied the applicable thresholds for jurisdiction and removal, *see* 28 U.S.C. § 1332, 28 U.S.C. § 1441, and 28 U.S.C. § 1446, and plaintiffs' action thus properly lies with this Court. The parties have since engaged in discovery and Bombardier now brings its motion *in limine* to preclude plaintiffs' expert witness testimony, and their motion for summary judgment.[1]

*B.    Facts*

Before compiling the facts, the Court must address plaintiffs' response to Bombardier's

---

[1]During the pendency of this motion, this action was transferred from Senior Judge Howard G. Munson to the undersigned. *See* Dkt. No. 24, Order.

2

Statement of Material Facts. In responding to Bombardier's six-page, fifty-four paragraph Statement of Material Facts, plaintiffs' response failed to "mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs." L.R. 7.1(a)(3). Local Rule 7.1(a)(3) further provides that "<u>Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party</u>." L.R. 7.1(a)(3). Although plaintiffs filed a three-page, six paragraph Statement of Material Facts, they neither specifically admitted nor denied any of Bombardier's assertions. *See* Dkt. No. 18, Statement of Material Facts. Therefore, the Court admits Bombardier's Statement of Material Facts in its entirety.[2]

Plaintiffs assert that Rabozzi sustained a permanent injury to his left eye on October 3, 2000, at their summer home in Hammond, New York, while using a pressure washer to clean a 1996 SeaDoo Speedster jet boat ("Jet Boat") owned by their daughter, Gina Vrooman, manufactured by Bombardier, Inc., and distributed by Bombardier Motor Corp. of America. *See* Dkt. No. 17, Statement of Material Facts at ¶¶ 2, 9-10, and 25-26; Ex. A., Compl. at ¶ 9; Dkt. No. 18, Statement of Material Facts at 2-3. At the time of the accident, Rabozzi was alone and was wearing prescription eyeglasses. *See* Dkt. No. 17, Statement of Material Facts at ¶ 13. At the time of the accident, the pressure washer was set on "stream" as opposed to "spray," but Rabozzi does not recall whether the pressure washer was set at low or high pressure. *Id.* at ¶¶ 14-15. Rabozzi pressure-washed the transom area of the Jet Boat for approximately eight to ten minutes. *Id.* at ¶¶ 16-17. Immediately

---

[2] Plaintiffs concede that the "facts in this case are not in dispute." Dkt. No. 18, Mem. of Law at 5.

prior to the accident, Rabozzi was washing the Jet Boat's speed sensor assembly,[3] the design of which, including a paddle wheel, was used on every Bombardier model jet boat dating back to 1993. Dkt. No. 17, Statement of Material Facts at ¶¶ 18, 27. Rabozzi recalls that he moved the wand of the pressure washer back and forth across the Jet Boat, and its speed sensor assembly, at a distance of eighteen inches. *See id.* at ¶¶ 19-20. Rabozzi denies that he trained the stream of the pressure washer directly on the speed sensor assembly. *Id.* at ¶ 21. Although Rabozzi does not recall seeing warning decals on either the Jet Boat or the pressure washer, he independently understood that the pressure washer expelled water with great force. *Id.* at ¶¶ 22-24. Plaintiffs claim that as Rabozzi washed the speed sensor assembly, the paddle wheel broke apart upon being contacted with water from the pressure washer causing its remnants to hurtle through the air. One of the paddle wheel's fractured pieces penetrated the left lens of Rabozzi's prescription eyeglasses and struck his left eye. *See id.* at ¶ 4; Ex. A., Compl. at ¶ 7. In addition, three pieces of glass from the eyeglasses embedded in Rabozzi's eye. The impact of the paddle wheel and eyeglass debris bruised Rabozzi's eye and caused a detached retina, which required surgical repair. *See id.*, Ex. E. Answers to First Interrogs. at ¶ 12.

Plaintiffs retained an expert, Eugene F. Penzimer, P.E., who submitted a report dated April 14, 2005. *See id.* at ¶ 6; Dkt. No. 18, Penzimer C.V. Penzimer has a degree in civil engineering, but he has no formal education or training in the field of mechanical engineering. *Id.* at ¶¶ 29-30. Penzimer has never designed a machine of any kind let alone a jet boat or a component part of a jet boat. Dkt. No. 17, Statement of Material Facts at ¶¶ 31-32. He has never worked for a company that

---

[3]The speed sensor assembly is exposed on one side to the water passing beneath the bottom of the Jet Boat and aft of the transom. The passing water causes the paddle wheel configuration to spin such that the faster the water passes under the Jet Boat, the faster the paddle wheel spins. The rate of the paddle wheel's spinning is converted into the Jet Boat's speed for instrumentation display purposes. *See* Dkt. No. 17, Mem. of Law at 4.

designs or manufactures jet boats or component parts for jet boats. *Id.* at ¶ 33. Prior to the case at bar, Penzimer had never worked on a case involving a jet boat nor reviewed any manuals, drawings or other materials related to a jet boat. *Id.* at ¶¶ 34-35. Penzimer did not review any literature or published material to learn about jet boats or to assist him with the formation of his opinions in this case. *See* Dkt. No. 17, Statement of Material Facts at ¶ 36. Prior to the instant case, Penzimer had never authored any materials on jet boats or on the subjects of product design and product safety. *Id.* at ¶¶ 37-38. Penzimer has never authored any publications of any kind. *Id.* at ¶ 39. Prior to the case at bar, Penzimer had never inspected a jet boat. *Id.* at ¶ 40. Penzimer inspected the Jet Boat in September 2004, but he did not inspect the pressure washer used by Rabozzi. *Id.* at ¶¶ 41-42. Penzimer does not know whether the alleged defect in the Jet Boat was a design defect or a manufacturing defect. *Id.* at ¶ 43. Penzimer did not obtain an exemplar jet boat and an exemplar pressure washer for the purpose of testing and did not perform any test or experiments of any kind related to his opinions in this case. *Id.* at ¶¶ 44-45. Penzimer acknowledged that although he could have performed exemplar testing, he did not because he believed it would be impractical. *Id.* at ¶ 46. Penzimer admitted that his opinions were developed solely for the purposes of this litigation. *Id.* at ¶ 47. Penzimer does not know the amount of force required to break a paddle wheel apart. *Id.* at ¶ 48. Penzimer acknowledged that he does not have an alternative design for the speed sensor assembly or paddle wheel. *Id.* at ¶ 49.

Penzimer has no formal training or education in the field of product warnings. *Id.* at ¶ 50. Penzimer does not recall ever giving testimony on the subject of warnings. *Id.* at ¶ 51. Penzimer has never been qualified as an expert on warnings in state or federal court. *Id.* at ¶ 52. Penzimer did not prepare a design concerning the text and format of his proposed warning. Dkt. No. 17, Statement of

5

Material Facts at ¶ 53. Penzimer has not done any research or performed any testing to determine whether a user would heed his proposed warning. *Id.* at ¶ 54.

In his expert report disclosed pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure, Penzimer opined that the paddle wheel was defectively designed and produced and that the paddle wheel should have been designed and produced with increased strength sufficient to withstand the forces produced by a pressure washer. *See* Dkt. No. 17, Statement of Material Facts at ¶ 7; Dkt. No. 17, Mem. of Law at 3. Penzimer further opined that Bombardier should have placed warnings on the Jet Boat and in its Operator's Guide warning against the use of pressure washers to clean the Jet Boat. *Id.* at ¶ 8.

## II.     DISCUSSION

### *A.     Summary Judgment Standard*

The standard for summary judgment is familiar and well-settled. Rule 56 allows for summary judgment where the evidence demonstrates that "there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is properly regarded as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1991) (quoting FED. R. CIV. P. 1). A court may grant a motion for summary judgment when the moving party carries its burden of showing that no triable issues of fact exist. *See Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990). In light of this burden, any inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party. *See id.*; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam). If the moving party meets its burden, the burden shifts to the non-moving party to come

forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The role of the court on a motion for summary judgment is not to try issues of fact but only to determine whether there are issues of fact to be tried. *See*, *e.g.*, *Anderson*, 477 U.S. at 255; *Gallo v. Prudential Residential Services, Limited Partnership*, 22 F.3d 1219, 1223-24 (2d Cir. 1994); *Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d 54, 58 (2d Cir. 1987). The drawing of inferences and the assessment of the credibility of the witnesses remain within the province of the finders of fact. To defeat a motion for summary judgment, however, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A dispute regarding a material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. When reasonable minds could not differ as to the import of the evidence, then summary judgment is proper. *See Anderson*, 477 U.S. at 250-251, 106 S.Ct. at 2511.

    B. *Motion In Limine to Preclude Plaintiffs' Expert's Testimony*

Bombardier moves, *in limine*, to preclude the testimony of plaintiffs' expert. Motions *in limine* allow courts to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). Bombardier argues that Penzimer lacks the proper qualifications to be an expert in this matter, and failed to utilize reliable methodology in performing his analysis and reaching his opinions. Bombardier asserts that Penzimer failed to perform any tests or experiments to support his opinions. Bombardier also notes that Penzimer failed to distinguish the alleged defect as one in born in its design or its manufacture, and that he acknowledged that he does not have an alternative design

7

for the speed sensor assembly or paddle wheel. *See* Dkt. No. 17, Mem. of Law at 3-4. Therefore, Bombardier argues that plaintiffs' expert testimony lacks the appropriate validation required by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

> Rule 702 of the Federal Rules of Evidence provides that
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Thus "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. Although *Daubert* did not establish a definitive list of factors for determining the reliability of expert testimony, it did set forth a "non-exhaustive checklist" for a district court's consideration:

> (1) whether the expert's technique or theory can be or has been tested–that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject[ed] to peer review and publication; (3) the known or potential rate of error for the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community.

FED. R. EVID. 702 Advisory Committee's Note (2000 Amendment); *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005). "None of the factors is dispositive by itself, and other factors may be pertinent depending on the type of expert testimony at issue." *Schwab v. Philip Morris USA, Inc.*, 2005 WL 2401647, at *1 (E.D.N.Y., Sept. 29, 2005); *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) ("[T]here are many different kinds of experts, and many different kinds of expertise . . . . [T]he gatekeeping inquiry must be tied to the facts of a particular case.") (internal citations and punctuation omitted). "[T]he trial court's role as gatekeeper is not intended to serve as a replacement

for the adversary system." *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

        1.        Penzimer's Qualifications

There is no doubt that Penzimer has some engineering qualifications. His curriculum vitae reveals that he earned a Bachelors of Science degree in civil engineering from Rensselaer Polytechnic Institute and has worked as a State of New York licensed professional engineer for over thirty-five years, accumulating experience in various civil engineering applications, including potable water supply projects, municipal and industrial wastes, and highway construction. *See* Dkt. No. 18, Penzimer C.V. There must, however, be a sufficient nexus between the witness's expertise and the subject about which he intends to testify. *See Daubert*, 509 U.S. at 592-93, 113 S.Ct. at 2796-97; *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 81 (2d Cir. 1997) ("In some circumstances, therefore, a district court may properly conclude that witnesses are insufficiently qualified despite the relevance of their testimony because their expertise is too general or too deficient."); *Lappe v. American Honda Motor Co., Inc.*, 857 F.Supp. 222, 227 (N.D.N.Y. 1994) ("An expert must, however, stay within the reasonable confines of his subject area, and cannot render expert opinion on an entirely different field or discipline.") (citation omitted).

The Second Circuit addressed a similar evidentiary issue in *Zaremba v. General Motors Corp.*, 360 F.3d 355 (2d Cir. 2004), where it upheld the exclusion of proposed expert testimony concerning the defective design of a car roof and windshield. The proffered expert "had only a bachelor's degree in engineering and his only practical experience was in designing parts for

9

automobile air bags" while "his employment . . . consisted entirely of consulting for litigation . . . ." *Id.* at 359. In light of the questions which his testimony was expected to address, the Second Circuit deemed these qualifications "meager." *Zaremba*, 360 F.3d at 360.

Here, Penzimer opined that

> The use of pressure washers to clean fiberglas [sic] boats is common in the industry, as corroborated in discussions with various boat liveries. The manufacturer of the Sea-Doo knew, or should have known, that pressure washers are commonly used to clean fiberglas [sic] boats. The speed wheel was defectively designed and produced, and should have been designed and produced with increased strength sufficient to withstand forces equal to that produced by pressure washers. If it was desired to eliminate the possibility of pressure washer use, warnings should have been mounted on the boat and in the Operator's Guide, stating that the use of pressure washers could result in injury.

Dkt. No. 18, Penzimer Findings. There is no evidence, however, that Penzimer has ever designed or manufactured any marine vessels, let alone recreational boats or jet boats or their component parts. There is no evidence that Penzimer has ever studied marine engineering, authored, presented or published any papers on product design or safety or mechanical or marine engineering, or worked for a company that designed jet boats. Penzimer has no formal training or education in the field of product warnings. The vast majority of his experience is in civil engineering. Although courts may permit a witness with general engineering expertise to testify, it is clear that plaintiffs have not demonstrated that Penzimer's specific "knowledge, skill, experience, training, or education" is relevant to the facts of this case. The Court finds that Penzimer is not qualified to testify. Penzimer's experience is too far removed from the subject matter of his expected testimony. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998) (upholding exclusion, under FED. R. EVID. 702, of proffered expert who lacked relevant experience).

    2.  Penzimer's Methodology

10

Even assuming *arguendo* that Penzimer's qualifications sufficed, the Court would still preclude his testimony because plaintiffs have not established that the methodology he employed to arrive at his opinion is reliable. In *Zaremba*, for example, the Second Circuit upheld the exclusion of an engineer's testimony concerning the alternative design of an automobile roof and windows in part because there was no showing that he had tested his new design. 360 F.3d at 358. Here, Penzimer failed to include a proposed alternative design in his expert report. *See* Dkt. No. 18, Penzimer Report. However, after Bombardier initiated its motion for summary judgment, Penzimer then described an alternative design for the speed sensor assembly and paddle wheel in his Answering Affidavit. *See* Dkt. No. 19, Reply Mem. of Law at 5; Dkt. No. 18, Penzimer Answering Aff. at ¶ 37. There is no evidence, however, that he tested the proposed design, much less built and tested a prototype. *Compare* Dkt. No. 18, Penzimer Answering Aff. at ¶ 37 *with* Dkt. No. 17, Statement of Material Facts at ¶ 49; Ex. J. at 70. There is no indication that Penzimer performed any tests or measurements on either the Jet Boat, or an exemplar model, or the pressure washer, or an exemplar model. Penzimer failed to perform any tests measuring the forces that the speed sensor assembly could withstand.

Penzimer's report fails to explain the reasoning or calculations behind his opinions. For example, Penzimer opines that "the fact that the wheel disintegrated can only mean that the wheel design and construction was defective. The plastic-like composition was obviously unable to withstand the force exerted on it by the pressure washer." *See* Dkt. No. 18, Penzimer Report. Without more, however, the Court is left " 'with the mere *ipse dixit*, or say so, of the' witness." *Smith v. Herman Miller, Inc.*, 2005 WL 2076570, at *5 (E.D.N.Y. Aug. 26, 2005) (quoting *Dreyer v. Ryder Auto. Carrier Group, Inc.*, 367 F.Supp.2d 413, 417 (W.D.N.Y. 2005)).

11

Plaintiffs have satisfied none of the four factors identified in *Daubert* with respect to Penzimer's proposed testimony about a safer alternative design: (1) Penzimer has not tested his design; (2) he has not subjected it to peer review or publication; (3) his design does not have a "known rate of error," since it has not been tested; and (4) Penzimer has not shown general acceptance either of his design or of his methodology. Numerous courts have excluded expert testimony regarding a safer alternative design where the expert failed to create drawings or models or administer tests. *See Zaremba*, 360 F.3d at 358-59 (collecting cases); *Brooks v. Outboard Marine Corp.*, 234 F.3d 89, 92 (2d Cir. 2000) (upholding the exclusion of an expert who, among other "shortcomings," "never attempted to reconstruct the accident and test his theory" of a safer outboard motor design.")

        *C.*     *Summary Judgment Is Appropriate*

On a summary judgment motion, the Court properly considers only evidence that would be admissible at trial and "an expert's report is not a talisman against summary judgment." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997). In light of the Court's decision to exclude the testimony of plaintiffs' expert, plaintiffs have no evidence on the record to support their strict liability and negligence claims and thus, summary judgment is appropriate. *See*, *e.g.*, *Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 270-71 (2d Cir. 2002) ("Having concluded that the district court did not abuse its discretion in granting defendant's *Daubert* motion, we also affirm the district court's grant of defendant's motion for summary judgment."); *Brooks*, 234 F.3d at 92 ("Having determined that the district court acted within its discretion in excluding [plaintiff's expert] testimony, the plaintiff has no evidence in the record to support his theory that the motor had a design defect which caused the accident or increased its severity. As a result, summary judgment was properly granted.").

**III.    CONCLUSION**

WHEREFORE, after careful consideration of the parties' submissions and the applicable law, it is hereby

ORDERED, that defendants' motion *in limine* for an order pursuant to Rule 702 of the Federal Rules of Evidence to preclude the testimony of plaintiffs' expert witness (Dkt. No. 17) is GRANTED; it is further

ORDERED, that defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Dkt. No. 17) is GRANTED and plaintiffs' case is dismissed in its entirety.

IT IS SO ORDERED.

Dated:  March 27, 2007
        Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge